## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Lawrence D. Newman
Newman & Newman, P.C.
Noblesville, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Jodi Kathryn Stein
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

William Ray Neeb,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

October 13, 2015

Court of Appeals Case No.
29A02-1503-CR-145

Appeal from the Hamilton
Superior Court

The Honorable Steven R. Nation,
Judge

Trial Court Cause No.
29D01-1408-F2-7027

**Robb, Judge.**

# Case Summary and Issues

[1] Following a jury trial, William Neeb was convicted of Count I, dealing in methamphetamine weighing at least one gram but less than five grams, a Level 4 felony; Count III, dealing in methamphetamine weighing at least five grams but less than ten grams, a Level 3 felony; and Count V, dealing in methamphetamine weighing at least ten grams, a Level 2 felony. He received a sentence of thirty years imprisonment. Neeb appeals his convictions of Count III and V and his sentence, raising two issues for our review: 1) whether the State presented sufficient evidence to overcome Neeb's entrapment defense, and 2) whether Neeb's sentence is inappropriate in light of the nature of his offenses and character. Concluding there was sufficient evidence to sustain Neeb's convictions and his sentence is not inappropriate, we affirm.

# Facts and Procedural History

[2] On July 23, 2014, Detective Elizabeth Hubbs of the Hamilton County Boone County Drug Task Force was investigating Neeb while working as an undercover officer. Detective Hubbs and Alesia, a confidential informant who had arranged a meeting with Neeb, traveled to Neeb's trailer located in Noblesville. Detective Hubbs possessed a covert video camera, a digital recorder, and a microphone.

[3] After Neeb and Detective Hubbs disagreed about the location of the deal, the trio agreed to meet at a nearby Speedway gas station. Detective Hubbs and

Neeb began discussing the price for 3.5 grams of methamphetamine. Neeb stated the price was $325.00 and confirmed Detective Hubbs was receiving a "first time buyer's discount[.]" Transcript at 289. Alesia mentioned if they were satisfied with the methamphetamine then they would want more. Neeb indicated he could get more and that he was almost "always on[,]" signifying the pair could contact him at any time for more methamphetamine. *Id.* at 287. Ultimately, Detective Hubbs paid Neeb and took possession of the methamphetamine.

[4] Four days later, Detective Hubbs texted Neeb to arrange another methamphetamine purchase. Neeb responded and stated he could obtain a quarter ounce of methamphetamine. On August 4, Detective Hubbs met Neeb at a Dollar General store in Noblesville. In exchange for $575.00, Neeb gave Detective Hubbs 6.6 grams of methamphetamine. Two days later, Neeb texted Detective Hubbs inquiring as to how the most recent batch of methamphetamine worked for her. They then arranged a third meeting. On August 14, the two met at the same Dollar General store. In exchange for $1,100.00, Neeb gave Detective Hubbs 12.81 grams of methamphetamine. Neeb was arrested several days later.

[5] The State charged Neeb with Count I, Level 4 felony dealing in methamphetamine and Count II, Level 6 felony possession of methamphetamine for the July 23 transaction; Count III, Level 3 felony dealing in methamphetamine and Count IV, Level 5 felony possession of methamphetamine for the August 4 transaction; and Count V, Level 2 felony

dealing in methamphetamine and Count VI, Level 4 felony possession of methamphetamine for the August 14 transaction.

[6]     After being released on bond, Neeb called Alesia's aunt, Charlene Thompson, and left a series of threatening voicemails:

> Charlene, you know who this is.  Your niece has me looking at 90 years in prison and if she doesn't get me out of it and get me my truck back that I've worked hard for with my social security money, I'm rolling on you and Melinda.  She's got 24 hours or I'm calling the guy that I need to talk to.  Capisce?
> * * *
> Charlene, you know who this is.  You know what's going on, and so do I.  And I'm dead serious about what I said.  They want me to roll on somebody and you tell your little niece if she does not get me my truck back and does not get me out of trouble, all my charges dropped, because I was not messing with nobody but her.  She called me, begging me, and look what I've done for you.  This is all on a recording, yes, and I will roll on you and Melinda if she doesn't get me my truck back and get me out of trouble.  And I've already talked to Mike Howell about it.  So get it done.
> * * *
> Charlene, it's 24 hours.  I'm getting ready to call this guy and I'm going to fucking flip everybody if my truck ain't in my driveway today.

Tr. at 13.  As a result, the trial court revoked Neeb's bond.

[7]     At trial, the jury found Neeb guilty on all counts, and the trial court entered a judgment of conviction on Counts I, III, and V.  The trial court sentenced Neeb to thirty years in the Department of Correction.  This appeal ensued.

# Discussion and Decision

## I. Sufficiency of the Evidence

### A. Standard of Review

"We review a claim of entrapment using the same standard that applies to other challenges to the sufficiency of evidence." *Dockery v. State*, 644 N.E.2d 573, 578 (Ind. 1994). When reviewing the sufficiency of the evidence to support a conviction, a reviewing court shall consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). The court neither reweighs the evidence nor reassesses the credibility of witnesses. *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005). Rather, the court must respect "the jury's exclusive province to weigh conflicting evidence." *Id.* (citation omitted). Therefore, the court should affirm the conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Drane*, 867 N.E.2d at 146-47 (citation omitted).

### B. Entrapment

Neeb contends the State failed to present sufficient evidence to overcome his defense of entrapment as to Counts III and V. Specifically, Neeb argues the amount of methamphetamine increased at the second and third transactions due to police inducement and he was not predisposed to deal in the amounts that created the bases for Counts III and V. At the outset, we note the jury was instructed on the entrapment defense, but nevertheless found Neeb guilty.

Indiana law provides for the defense of entrapment as follows:

> (a) It is a defense that:
> (1) the prohibited conduct of the person was the product of a law enforcement officer, or his agent, using persuasion or other means likely to cause the person to engage in the conduct; and
> (2) the person was not predisposed to commit the offense.
>
> (b) Conduct merely affording a person an opportunity to commit the offense does not constitute entrapment.

Ind. Code § 35-41-3-9. "There is thus no entrapment if the State shows either (1) there was no police inducement, or (2) the defendant was predisposed to commit the crime." *Griesemer v. State*, 26 N.E.3d 606, 609 (Ind. 2015). The question of whether a defendant was predisposed to commit the crime is for the trier of fact. *Dockery*, 644 N.E.2d at 577.

The State presented sufficient evidence to show Neeb's predisposition to deal in methamphetamine. Factors indicating a predisposition to sell drugs include: knowledge of drug prices; knowledge of drug sources and suppliers; use and understanding of terminology of the drug market; solicitation of future drug sales; and multiple sales to undercover officers. *Riley v. State*, 711 N.E.2d 489, 494 (Ind. 1999). Here, Neeb sold Detective Hubbs methamphetamine on three separate occasions. Moreover, as evidenced by Neeb's first interaction with Hubbs, Neeb was well-versed in drug jargon, possessed the capability of attaining more methamphetamine, had knowledge of methamphetamine pricing, and agreed to a "first-time buyer's discount":

[Neeb:] You get a bunch of crumbs and shit, I told this one mother fucker, I said, man, I don't want no fucking Fruity Pebbles, you know, fuck that shit.

[CI:] If [Hubbs] and her roommate like it and if I like it, then we're going to want more of this . . . .

[Neeb:] I can get it. I'm just saying, that's all I'm saying.

[Hubbs:] Are you always on then?

[Neeb:] Pretty much.

* * *

[Hubbs:] So here's the deal. Do I get a first time buyer's discount?

[Neeb:] 325. You are. I'm telling you right now, they charge 400 for this shit, an eight ball.

[Hubbs:] Oh, they do.

[Neeb:] I'm serious. Fuck, yeah. If you can get it somewhere cheaper than that, let me know. I'll buy it all day long. As long as it's chunks like that. I won't buy no Fruity Pebbles.

Tr. at 287, 289-90. Detective Hubbs testified Neeb's reference to "Fruity Pebbles" was "talking about the quality of meth." *Id.* at 297. At the second transaction, Neeb indicated that, because he feared both his neighbor's wandering eyes and his girlfriend discovering his transactions, he "usually deliver[ed]." *Id.* at 306. Additionally, Neeb obtained, and dealt, an increasing amount of methamphetamine. Finally, we note that, prior to the third transaction, Neeb initiated contact with Detective Hubbs.

[12] Neeb was a willing participant in the act of dealing in methamphetamine. *See Turner v. State*, 993 N.E.2d 640, 644 (Ind. Ct. App. 2013) (finding defendant's ability to produce seven ounces of cocaine, familiarity with drug jargon, and solicitation of a future transaction was sufficient evidence of predisposition to

deal cocaine), *trans. denied*.  Accordingly, the evidence presented at trial was sufficient for the jury to conclude Neeb was predisposed to commit the crime of dealing in methamphetamine and therefore rebut his defense of entrapment.

## II.  Inappropriateness of Sentence

### A.  Standard of Review

[13] Neeb also contends his sentence is inappropriate in light of the nature of the offenses and his character.  A reviewing court possesses the authority to revise a defendant's sentence "if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender."  Ind. Appellate Rule 7(B).  The burden is on the defendant to persuade the reviewing court the sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).  "[S]entencing is principally a discretionary function in which the trial court's judgment should receive considerable deference."  *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008).  It is not for the reviewing court "to achieve a perceived 'correct' result in each case," but "[t]he principal role of appellate review should be to attempt to leaven the outliers."  *Id.* at 1225.  Whether we regard a sentence as inappropriate turns on "the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case."  *Id.* at 1224.

# B. Neeb's Sentence

[14] As to the nature of the offense, the advisory sentence is the starting point the legislature selected as an appropriate sentence for the crime committed. *Anglemyer v. State*, 868 N.E.2d 482, 494 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218. Neeb was convicted of three felonies for dealing in methamphetamine: a Level 4 (Count I), a Level 3 (Count III), and a Level 2 (Count V). A Level 4 felony carries a sentencing range of two to twelve years, with an advisory sentence of six years, Ind. Code § 35-50-2-5.5; a Level 3 felony carries a sentencing range of three to sixteen years, with an advisory sentence of nine years, Ind. Code § 35-50-2-5(b); and a Level 2 felony carries a sentencing range of ten to thirty years, with an advisory sentence of seventeen and one-half years, Ind. Code § 35-50-2-4.5. Neeb received a twelve-year sentence on Count I, a sixteen-year sentence on Count III, and a thirty-year sentence on Count V, to be served concurrently.

[15] Neeb argues his actions spanning a period of three weeks should "not lead a trial court to order Neeb to execute the maximum sentence that he received." Brief of Appellant at 20. Yet, over this three-week period, Neeb easily obtained and sold an increasing amount of methamphetamine to Detective Hubbs—over twenty-two grams in total. Additionally, we note despite being found guilty on Counts I, III, and V, and being sentenced to the maximum on each count, Neeb's sentence is to be served concurrently, despite the trial court having the discretion to order the sentence run consecutively.

[16] As to his character, Neeb fails to take responsibility for his actions. The pre-sentence investigation report noted Neeb feels he was set-up and, because he was only helping out Alesia, his dealings were limited to Detective Hubbs. We note, however, Alesia was involved only in the first transaction, and Neeb continued to sell methamphetamine to Detective Hubbs. Moreover, Neeb's complete lack of remorse is evidenced by the threatening messages he left on Charlene Thompson's voicemail. Finally, Neeb's criminal history dates back to the early 1980s. Not including the convictions before us, Neeb has been convicted of four felonies stemming from battery and substance abuse charges and numerous other misdemeanors. Neeb has been placed on probation eleven times, and probation was revoked five of those times. Ultimately, Neeb demonstrates a disrespect for authority.

[17] Given the nature of the offense, Neeb's character, and his disrespect for authority, we are not persuaded Neeb's sentence of thirty years in the Department of Correction is inappropriate.

# Conclusion

[18] The State presented sufficient evidence to overcome Neeb's entrapment defense, and his sentence is not inappropriate in light of the nature of his offenses or his character. Therefore, we affirm his convictions and sentence.

[19] Affirmed.

Vaidik, C.J., and Pyle, J., concur.