

FILED

Sep 14 2018, 10:08 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

James R. Recker
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lee M. Stoy, Jr.
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Chad Thomas Burnell,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

September 14, 2018

Court of Appeals Case No.
29A02-1710-CR-2374

Appeal from the Hamilton
Superior Court

The Honorable Gail Bardach,
Judge

Trial Court Cause No.
29D06-1612-F6-8964

**Bailey, Judge.**

# Case Summary

[1] Chad T. Burnell ("Burnell") challenges his conviction, following a jury trial, of operating a vehicle while intoxicated, as a Level 6 felony,[1] and his status as a habitual vehicular substance offender.[2] He raises eight issues on appeal, which we consolidate and restate as: whether Burnell's trial counsel was ineffective.

[2] We affirm.

# Facts and Procedural History

[3] At around 12:30 a.m. on November 24, 2016, Hamilton County Sheriff's Deputy Jason Cramer ("Dep. Cramer") saw a vehicle driven by Burnell weave abruptly within its lane and cross the center line. Dep. Cramer activated his in-car camera and his emergency lights to conduct a traffic stop. Soon after Burnell pulled over, Dep. Cramer approached the vehicle and explained to Burnell that he had been stopped because he "went left of center." Tr. Vol. II at 201. Dep. Cramer could smell the odor of an alcoholic beverage coming from inside the vehicle. Dep. Cramer asked Burnell if he had been drinking, and Burnell stated that he had consumed three alcoholic beverages. Dep. Cramer then asked Burnell if he had his driver's license on him and if it was valid.

---

[1] Ind. Code § 9-30-5-2 and I.C. § 9-30-5-3(a)(1).

[2] I.C. § 9-30-15.5-2.

Burnell told Dep. Cramer that he did not have his license with him and that, as far as he knew, his license was valid.

[4] After noticing a knife in the back seat of Burnell's vehicle, Dep. Cramer asked Burnell to step out of the vehicle. Dep. Cramer asked a backup officer to pull the passenger out of the vehicle and make sure he did not have any weapons. When Burnell stepped out of the vehicle, Dep. Cramer conducted a pat down search for other weapons and found a knife in Burnell's pocket. After securing the knives, Dep. Cramer went back to his patrol car and discovered that Burnell's driver's license was suspended. Dep. Cramer came back to Burnell and asked if Burnell knew that his license was suspended. Burnell did not answer. Dep. Cramer then requested permission to search the car, and Burnell consented.

[5] After searching the vehicle, Dep. Cramer performed a horizontal gaze nystagmus test on Burnell. Burnell exhibited six out of six clues and failed the test. Dep. Cramer did not conduct any more field sobriety tests on Burnell, because Burnell stated that he had nerve damage in his legs. Burnell subsequently agreed to take a breathalyzer; however, after three attempts, Burnell was unable to give a sufficient sample for the breathalyzer. Therefore, Dep. Cramer sought and obtained Burnell's consent to conduct a blood test, the results of which showed that Burnell had a blood alcohol concentration of 0.119 grams of alcohol per 100 milliliters of his blood.

[6] On December 5, 2016, the State charged Burnell as follows: Count I, operating a vehicle while intoxicated, as a Class A misdemeanor;[3] Count II, operating a vehicle with an alcohol concentration of .08 or more, as a Class C misdemeanor;[4] Count III, operating a vehicle while intoxicated, as a Level 6 felony; Count IV, operating a vehicle with an alcohol concentration of .08 or more, as a Level 6 felony;[5] and Count V, driving while suspended, as a Class A misdemeanor.[6] The State also alleged that Burnell was a habitual vehicular substance offender.

[7] At Burnell's September 19, 2017, jury trial, Dep. Cramer testified that when he approached Burnell he could smell the odor of an alcoholic beverage coming from the vehicle, that Burnell's speech was slurred and thick, and that Burnell's eyes were red, watery, and glassy. Dep. Cramer stated that he had to remind Burnell to place his vehicle in park when he asked Burnell to exit the vehicle and that Burnell failed the horizontal gaze nystagmus test. The toxicology results were also admitted into evidence. State's Ex. 5.

[8] The jury found Burnell guilty of operating a vehicle while intoxicated as a Class A misdemeanor and operating a vehicle with an alcohol concentration of .08 or more as a Class C misdemeanor. Burnell elected to forgo the enhancement

---

[3] I.C. § 9-30-5-2.

[4] I.C. § 9-30-5-1(a)(1).

[5] I.C. § 9-30-5-1(a) and I.C. § 9-30-5-3(a)(1).

[6] I.C. § 9-24-19-3(a).

phase of trial and admit his prior convictions alleged in count III for the purposes of elevating the Class A misdemeanor to a Level 6 felony and the habitual vehicular substance offender enhancement. The trial court merged counts I and II with count III. On October 6, 2017, the trial court sentenced Burnell to two and a half years for operating a vehicle while intoxicated as a Level 6 felony, enhanced by an additional three years for being a habitual vehicular substance offender. Burnell now appeals.

# Discussion and Decision

[9]     Burnell contends that his trial counsel was ineffective. As our Supreme Court has noted:

> [t]his Court reviews claims of ineffective assistance of counsel under the two components set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the defendant must show that counsel's performance was deficient. *Id*. at 687, 104 S.Ct. 2052. This requires a showing that counsel's representation fell below an objective standard of reasonableness, *id*. at 688, 104 S.Ct. 2052, and that the errors were so serious that they resulted in a denial of the right to counsel guaranteed the defendant by the Sixth Amendment, *id*. at 687, 104 S.Ct. 2052. Second, the defendant must show that the deficient performance prejudiced the defendant. *Id*. To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. at 694, 104 S.Ct. 2052. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id*.

*Wentz v. State*, 766 N.E.2d 351, 360 (Ind. 2002). We will not second-guess trial counsel's strategy and tactics unless they are so unreasonable that they fall outside objective standards. *See, e.g.*, *Benefield v. State*, 945 N.E.2d 791, 797 (Ind. Ct. App. 2011). Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. *Wentz*, 766 N.E.2d at 361. And if we can dispose of a claim of ineffective assistance of counsel by analyzing the prejudice prong alone, we will do so. *Benefield*, 935 N.E.2d at 797 (citing *Wentz*, 766 N.E.2d at 360).

[10] However, we do not reach the merits of seven of Burnell's eight ineffective assistance of counsel contentions[7] because he has waived them by failing to make cogent argument and citation to legal authority as required by Indiana Appellate Rule 46(A)(8). That rule requires that each contention made in the argument section of an appellant's brief "must be supported by citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on." Ind. Appellate Rule 46(A)(8). This means that an appellant's argument section must contain

> a clear presentation of appellant's contentions with respect to the
> issues presented, the reasons in support of the contentions with

---

[7] His assertions on appeal are that his trial counsel was ineffective by: (1) failing to object to the admission of the video of Dep. Cramer's in-car camera; (2) failure to interview or depose the passenger in Burnell's car; (3) failure to interview or depose a different police officer with whom Burnell had interacted earlier that same evening; (4) failure to challenge the blood draw report; (5) failure to raise a challenge under *Pirtle v. State*, 323 N.E.2d 634 (Ind. 1975); (6) failure to raise the failure to give *Miranda* warnings; (7) failure to challenge the results of the breath test; and (8) failure to investigate the underlying convictions that were the basis for his elevated sentence and habitual substance offender enhancement. Appellant's Br. at 9-11.

> any applicable citation to authorities, statutes, and parts of the
> record relied upon, and a clear showing of how the issues and
> contentions relate to particular facts of the case under review.

*Dortch v. Lugar*, 266 N.E.2d 25, 44 (Ind. 1971) (explaining former Appellate Rule 8.3, the precursor to current Rule 46), *abrogated on other grounds by Collins v. Day*, 644 N.E.2d 72 (Ind. 1994). We will not review undeveloped arguments, for "a court which must search the record and make up its own arguments because a party has presented them in perfunctory form runs the risk of being an advocate rather than an adjudicator." *Keller v. State*, 549 N.E.2d 372, 373 (Ind. 1990). Thus, "[i]t is not sufficient for the argument section that an appellant simply recites facts and makes conclusory statements without analysis or authoritative support." *Kishpaugh v. Odegard*, 17 N.E.3d 363, 373 n.3 (Ind. Ct. App. 2014).

[11] Burnell contends that his trial counsel was ineffective in eight separate ways, but he fails to provide cogent reasoning or authority to support any contention except his third. His second and seventh contentions are each only one sentence long—and incomplete sentences[8] at that—with no citation to legal authority or the record. Where Burnell does cite to the record for the seven contentions, his citations are either irrelevant or support the opposite of what he

---

[8] In fact, much of Burnell's brief consists of incomplete sentences and other grammatical errors, making it difficult to even ascertain what his contentions are.

contends.[9]   Burnell only cites legal authority for contentions five and six and, even then, fails to state how the case law applies to the facts of this case.[10] Although Burnell summarizes the *Strickland* analysis, he fails to state how that analysis applies to any of the seven alleged errors of his trial counsel or how he was prejudiced in any way by those alleged errors.  Instead, Burnell makes only conclusory and/or speculative statements.  Because Burnell has failed to meet the requirements of Indiana Appellate Rule 46(A)(8) as to seven of his eight contentions, he has waived our review of them.

[12]   Burnell does provide very brief argument and citation to the record for his contention number three—his assertion that his trial counsel was ineffective for failing to interview a police officer from another agency who had an interaction with Burnell approximately half an hour before Dep. Cramer pulled Burnell over.  In support of this assertion, Burnell cites to his statement to the court at his August 31, 2017 final pre-trial conference.  At that time, Burnell informed the court, in the presence of his counsel, of his prior interaction that night with a Sheridan police officer.  Burnell contends that his trial counsel should have deposed the Sheridan officer about his observations of Burnell that night because "the logical conclusion [is] that [Burnell] was not intoxicated to the

---

[9] For example, Burnell maintains that his trial counsel was ineffective for "[f]ailure to note the blood draw report with a footnote that box containing the sample had been opened…," but then he cites to portions of the record showing that the box containing the blood samples were, in fact, sealed when received by the lab. Appellant's Br. at 10; App. Vol. III at 21-22.

[10] For example, Burnell claims his counsel was ineffective for failing "to raise a challenge pursuant to *Pirtle v. State*, [323 N.E.2d 634 (Ind. 1975)]," but he fails to state how *Pirtle* is applicable to his case or how the lack of a *Pirtle* challenge prejudiced him.  Appellant's Br. at 10.

point that it gave that officer any concern shortly before the subsequent later stop [by Dep. Cramer]." Appellant's Br. at 9-10.

[13] Even assuming—without deciding—that Burnell's trial counsel's failure to interview or depose the Sheridan police officer was so unreasonable that it fell outside objective standards,[11] Burnell has failed to show the prejudice prong of the *Strickland* analysis. That is, Burnell has failed to show a reasonable probability that, but for his counsel's error, the result of his trial would have been different. *Wentz*, 766 N.E.2d at 360. Rather, even if the Sheridan police officer had testified that Burnell did not seem to him to be intoxicated earlier that evening, there was overwhelming other evidence that Burnell was, in fact, intoxicated. The evidence showed that his blood alcohol concentration was 0.119 grams of alcohol per 100 milliliters of his blood, which was well above the legal limit. I.C. § 9-30-5-1(a)(1) (providing the legal limit is 0.07 grams). Dep. Cramer testified that when he approached Burnell he could smell the odor of an alcoholic beverage coming from the vehicle, that Burnell's speech was slurred and thick, and that Burnell's eyes were red, watery, and glassy. In addition, Dep. Cramer testified that he had to remind Burnell to place his vehicle in park when he asked Burnell to exit the vehicle and that Burnell failed the horizontal gaze nystagmus test. Thus, we cannot say that, but for trial

---

[11] We note that contention number three is also based on speculation—i.e., that the Sheridan police officer would have testified that he observed Burnell closely enough that evening to form an impression and that he did not believe Burnell was intoxicated.

counsel's failure to interview or depose the Sheridan police officer, the result of Burnell's trial would have been different.

# Conclusion

Burnell has waived seven of the eight contentions he raises on appeal by failing to provide cogent argument and citation to legal authority in compliance with Indiana Appellate Rule 46(A)(8). And, while Burnell may have provided the minimum amount of reasoning and citation to authority required as to his contention that his trial counsel was ineffective for failing to depose the Sheridan police officer, he failed to show how his trial counsel's error prejudiced him, given the overwhelming evidence of his intoxication.

Affirmed.

Mathias, J., and Bradford, J., concur.