


FILED

May 22 2019, 2:51 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

I N T H E

# Indiana Supreme Court

Supreme Court Case No. 18S-CR-585

## Delmar Kelly,
*Appellant (Defendant below),*

–v–

## State of Indiana,
*Appellee (Plaintiff below)*

Argued: January 17, 2019 | Decided: May 22, 2019

Appeal from the Hendricks Superior
Court No. 32D02-1710-F2-25
The Honorable Rhett M. Stuard, Judge

On Petition to Transfer from the Indiana Court of Appeals
No. 18A-CR-1162

**Opinion by Justice David**

Chief Justice Rush and Justices Massa, Slaughter, and Goff concur.

**David, Justice.**

After a jury found defendant guilty of dealing in a narcotic drug and resisting law enforcement, he appealed his conviction, arguing that the trial court committed fundamental error by allowing the State to present evidence of his post-arrest, pre-*Miranda* silence during trial. Finding that Kelly opened the door to this evidence and also finding no fundamental error, we affirm the trial court.

## Facts and Procedural History

Detective Maples of the Hendricks County Drug Taskforce recovered a cell phone from a suspected drug dealer. He then used the phone to pose as a drug dealer himself and set up a meeting with Defendant, Delmar Kelly, to purchase drugs. When Kelly arrived at the agreed upon location, officers attempted to block his vehicle and make an arrest, but Kelly maneuvered around them and led police on an almost five-mile chase before stopping in a residential neighborhood. During the chase, several items were thrown from the car, including a digital scale, heroin, and cocaine. When the officers finally forced Kelly to a stop, three men were removed from the car at gunpoint, handcuffed, and separated. The two other men besides Kelly were Roosevelt Garrett and Cameron Johnson. There is no evidence regarding when any of the three men received *Miranda* warnings.

During Kelly's jury trial, defense counsel began her opening statement by playing a jail call wherein Kelly stated that he was driving to make some money and "got caught up in" a "narcotics bust" but that he "ain't had nothing on [him]." (Tr. Vol 2. at 86; State's Ex. 10.) Defense counsel then went on to ask the jury to decide whether Kelly was part of the whole drug deal or just got caught up in the bust. She suggested he was an "unknowing means to an end" for his co-defendants. (Tr. Vol. 2 at 91.)

For its part, the State elicited testimony from two officers about Kelly's actions following his arrest:

| | |
|---|---|
| State: | Uh, any admission by the three about what – what was going on or what they were doing? |
| Detective Maples: | No, there was not. |
| State: | Did any of them give you information about what they were doing? |
| Detective Maples: | They did not, no. |

* * *

| | |
|---|---|
| State: | Did . . . Mr. Kelly appear to be befuddled or confused about why he was being stopped? |
| Detective Petree: | No, sir. |
| State: | Did he say anything to you? |
| Detective Petree: | Uh, none of the three really wanted to talk to us. |

(Tr. Vol. 2, pp. 107-08, 137.)

The prosecutor then argued in closing, in relevant part:

[Kelly's] guilty mind is also proven by things he didn't say. After the pursuit when he was given a chance to talk, to say what happened, to say, I don't know, [Roosevelt] just asked me to drive him to see a friend for money, we didn't hear that. He didn't say that. He didn't say I was just driving out here to meet a friend. I've [g]ot no idea why you're-why you're stopping me. He wasn't surprised at all he was being stopped because he knew exactly what was happening. You heard from the jail call-ca-phone call, he [was] caught up in a narcotics bust. He didn't know police would be waiting for him when he arrived at that [drug dealer's] address.

So there's no reason for him to be surprised [be]cause he knew exactly what he was doing. Wasn't surprised and at no time during that five-mile pursuit did he stop voluntarily. At no

time did he stop and say, please I – I was scared; I ran after driving through those yards, I just had to stop. I realize my mistake. No, he drove through those yards; drove through on 150, Dan Jones, weaving in and out of traffic; approaching speeds of nearly seventy miles per hour on Dan Jones. Speeds of nearly sixty miles per hour in the Settlement neighborhood. Only stopped when that neighborhood got so winding, so difficult to navigate that he had nowhere else to go. His affirmative conduct proves his intent to deal that day. The things he didn't say, no expression of confusion to prove his intent that day.

(Tr. Vol. 3, pp. 42-43.)  Kelly's counsel did not object to any of the above statements on the grounds that they violated his right to remain silent. (He did object on other grounds.)

The jury found Kelly guilty of dealing in a narcotic drug and resisting law enforcement.  Kelly appealed, only challenging the dealing in narcotics conviction, and argued that the trial court committed fundamental error by allowing the State to present evidence of his post-arrest, pre-*Miranda* silence during trial.

In a 3-0 memorandum decision, the Court of Appeals affirmed.  *Kelly v. State*, 2018 WL 4558306 (Ind. Ct. App. Sept. 24, 2018).  Relying on this Court's decision in *Myers v. State*, 27 N.E.3d 1069, 1080 (Ind. 2015), the court held that there was no error in using Kelly's post-arrest, pre-*Miranda* silence as substantive evidence against him during trial.  *Kelly*, 111 N.E.3d at *4. Further, even if there was an error, the Court of Appeals concluded that it was not fundamental error because: (1) the references to Kelly's silence were used to rebut his defense that he was oblivious to a drug transaction taking place; and (2) there was substantial evidence that Kelly knew about the drugs in the car. *Id.* at *5.

Kelly petitioned for transfer which we granted, thereby vacating the Court of Appeals opinion.  See Ind. Appellate Rule 58(A).

# Standard of Review

Because Kelly did not object at trial, he must establish fundamental error. Fundamental error is an exception to the general rule that a party's failure to object at trial results in a waiver of the issue on appeal. *Benson v. State*, 762 N.E.2d 748, 755 (Ind. 2002). A fundamental error is one that "make[s] a fair trial impossible or constitute[s] a clearly blatant violation of basic and elementary principles of due process presenting an undeniable and substantial potential for harm." *Durden v. State*, 99 N.E.3d 645, 652 (Ind. 2018) (internal citations and quotations omitted). This exception is very narrow and includes only errors so blatant that the trial judge should have acted independently to correct the situation. *Id*. Further, "merely because the error relates to a violation of a constitutional right does not, in and of itself, render it fundamental error requiring this Court consider the matter absent an objection at trial." *Wilson v. State*, 514 N.E.2d 282, 284 (Ind. 1987).

# Discussion and Decision

Kelly argues that the trial court committed fundamental error by allowing the State to comment on his silence after arrest but prior to the issuance of *Miranda* warnings. Our Court of Appeals applied *Myers v. State*, 27 N.E.3d 1069, 1080 (Ind. 2015), to find that because there is nothing in the record to suggest that Kelly had been advised of his *Miranda* rights, the State's use of Kelly's silence did not violate his constitutional rights. However, we find that *Myers* does not apply here. Applying other more analogous cases, we find that: 1) Kelly opened the door to the prosecutor's comments regarding his silence; and 2) because the mentions of his silence were minimal and there is ample evidence of his guilt, there is no fundamental error here.

The Fifth Amendment to the U.S. Constitution, made applicable to the states through the Fourteenth Amendment, provides that no person shall be compelled in any criminal case to be a witness against himself. U.S. Const. amend. V.; *Bleeke v. Lemmon*, 6 N.E.3d 907, 925 (Ind. 2014). To protect that right, police officers must advise citizens in custody that they

have the right to remain silent prior to questioning. *Miranda v. Arizona*, 384 U.S. 436, 479 (1966). Further, the U.S. Supreme Court has held that the government cannot use post-arrest, post-*Miranda* silence against a defendant for either impeachment purposes or substantively in the prosecution's case-in-chief. *Doyle v. Ohio,* 426 U.S. 610, 618 (1976); *Wainwright v. Greenfield*, 474 U.S. 284, 295 (1986).

However, whether a defendant's post-arrest, pre-*Miranda* silence may be used substantively as evidence against a defendant has yet to be addressed by the United States Supreme Court. Also, the federal circuits are split on this issue. *See United States v. Wilchcombe*, 838 F.3d 1179, 1190 (11th Cir. 2016) (". . . the circuit courts do not agree as to when the government may comment on a defendant's silence."). Indiana courts have held that post-arrest, pre-*Miranda* silence cannot be used as substantive evidence in the State's case-in-chief. *See Akard v. State*, 924 N.E.2d 202, 209 (Ind. Ct. App. 2010) (defendant's post-arrest, pre-*Miranda* silence could not be used as part of the State's case-in-chief), *aff'd in part and reversed in part on other grounds*, 937 N.E.2d 811 (Ind. 2010); *Peters v. State*, 959 N.E.2d 347, 353 (Ind. Ct. App. 2011); *Rowe v. State,* 717 N.E.2d 1262, 1267 (Ind. Ct. App. 1999) (defendant's pre-*Miranda* silence could not be used in State's case-in-chief).

In *Bieghler v. State*, 481 N.E.2d 78, 92 (Ind. 1985), this Court set forth a five-part test to determine if the use of defendant's post-arrest, post-*Miranda* silence was harmless. In *Rowe*, our Court of Appeals adopted this test for cases in which the State referred to defendant's pre-*Miranda* silence in its case-in-chief. 717 N.E.2d at 1267.

With regard to whether defendant's post-arrest, pre-*Miranda* silence can be used for impeachment purposes, the U.S. Supreme Court has held that it can be used. *Fletcher v. Weir*, 455 U.S. 603, 607 (1982). Further, our courts have found that where a defendant opens the door, a prosecutor may comment on a defendant's post-arrest, pre-*Miranda* silence. *See Cameron v. State*, 22 N.E.3d 588, 592-93 (Ind. Ct. App. 2014); *Ludack v. State*, 967 N.E.2d 41, 45 (Ind. Ct. App. 2012). Finally, our courts have declined to find fundamental error when they have determined a prosecutor made improper comments but where the comments were isolated statements

and there was ample evidence of defendant's guilt. *See Owens v. State*, 937 N.E.2d 880, 894 (2010); *cf.*, *Nichols v. State*, 974 N.E.2d 531, 536 (Ind. Ct. App. 2012) (finding the prosecutor's comments regarding defendant's silence were fundamental error when the prosecutor's comments were obviously made to suggest defendant's silence was indicative of guilt and there was not overwhelming evidence of guilt).

Here, Kelly's defense counsel presented in opening the theory that Kelly was merely trying to make money driving others around and unwittingly got caught up in a drug bust. In response, the State elicited testimony from police about Kelly's demeanor at the time of his apprehension in effort to counter the concept that Kelly had no idea what was going on. The State asked police officers if Kelly said anything, and they responded that he did not. During the State's closing, it took the matter further by stating that Kelly's guilty mind was demonstrated because he had the chance to talk but did not say what he was doing or ask why he was stopped, nor did he look, act, or express any confusion.

As noted above, our Court of Appeals applied this Court's opinion in *Myers*, 27 N.E.3d at 1080, to find that because there is nothing in the record to suggest that Kelly had been advised of his *Miranda* rights, the State's use of Kelly's silence did not violate his constitutional rights. *Kelly v. State*, 111 N.E.3d 262 (Ind. Ct. App. 2018), *transfer granted, opinion vacated*. However, *Myers* does not go so far as to state that any post-arrest, pre-*Miranda* statements may be used against a defendant. Instead, *Myers* notes that even if Myers was provided with *Miranda* warnings, under the facts and circumstances of that case, a constitutional violation did not occur because the testimony at issue in that case was from Myers's mother, who commented that he did not want to speak to police and that he wanted an attorney. Further, in footnote 3 of our *Myers* opinion, we state that our constitutional analysis is case-specific. Therefore, *Myers* does not apply to the situation before us.

Instead, we find *Cameron v. State*, 22 N.E.3d 588 (Ind. Ct. App. 2014), to be more factually analogous to the present case. There our Court of Appeals declined to decide whether defendant's post-arrest, pre-*Miranda* silence is protected because it found that even if the prosecutor's questions

and comments were a violation, Cameron opened the door to them. *Id.* at 592-93. Essentially, Cameron argued that the victim stabbed him as part of his defense theory, and the State offered testimony and an argument in effort to show that Cameron had not actually suffered any injuries. *Id*. at 590-91. Part of that testimony and argument went to the fact that Cameron did not say anything to reflect that he was injured or hurt. *Id*. Similarly, in this case, Kelly offered his defense theory that he was unaware of the drug deal but rather was an unwitting participant, and in response, the State offered testimony and argument that he was aware of the drug deal, both because he did not say anything indicating that he was unaware of why the police were arresting him and because of his demeanor and behavior. Accordingly, we find that Kelly opened the door to the State's response that included comments about his silence.

Further, even if the trial court erred in admitting the State's evidence and argument about Kelly's post-arrest, pre-*Miranda* silence, this error is not a fundamental one for the reasons articulated in *Owens v. State*, 937 N.E.2d 880, 894 (Ind. Ct. App. 2010). That is, the reference to Kelly's silence in the officer's testimony was minimal in the context of the entire trial. Also, while the statements made by the prosecution in closing did reference Kelly's silence, they went more towards Kelly's unsurprised demeanor and behavior than his silence. Additionally, the evidence of Kelly's guilt was substantial. Kelly was driving a car containing drugs and a scale. He fled the dealer's house and led police on an almost five-mile chase during which the drugs and scale were thrown from the car. The references to his post-arrest, pre-*Miranda* silence did not make his trial fundamentally unfair in light of this other evidence.

## Conclusion

We hold that Kelly opened the door to the State's presentation of evidence and argument related to his post-arrest, pre-*Miranda* silence and that the trial court did not commit fundamental error in admitting this evidence. We affirm the trial court.

Rush, C.J., and Massa, Slaughter and Goff, JJ., concur.

ATTORNEYS FOR APPELLANT
Zachary J. Stock
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Curtis T. Hill, Jr.
Attorney General

Kelly A. Loy
Angela N. Sanchez
Brian Woodard
Deputy Attorneys General
Indianapolis, Indiana